1
2
3
4
5
6
7                   **UNITED STATES DISTRICT COURT**

8                 **EASTERN DISTRICT OF CALIFORNIA**

9
10

11   AMADO SALDIVAR ARMAS,                    Case No. 1:11-cv-00772-SKO-HC

12              Petitioner,                   ORDER DENYING THE FIRST AMENDED
                                              PETITION FOR WRIT OF HABEAS CORPUS
13        v.                                  (DOC. 31)

14   MATTHEW CATE, Secretary of the           ORDER DIRECTING THE ENTRY OF
     California Department of                 JUDGMENT FOR RESPONDENT AND
15   Corrections and Rehabilitation,          DECLINING TO ISSUE A CERTIFICATE OF
                                              APPEALABILITY
16              Respondent.

17

18        Petitioner is a state prisoner proceeding with counsel and in

19   forma pauperis with a petition for writ of habeas corpus pursuant to

20   28 U.S.C. § 2254.  Pursuant to 28 U.S.C. 636(c)(1), the parties have

21   consented to the jurisdiction of the United States Magistrate Judge

22   to conduct all further proceedings in the case, including the entry

23   of final judgment, by manifesting their consent in writings signed

24   by the parties or their representatives and filed by Petitioner on

25   January 12, 2012, and on behalf of Respondent on January 24, 2012.

26   Pending before the Court is the first amended petition (FAP), which

27   was filed on August 14, 2012.  Respondent filed a first amended

28

                                        1

answer on October 4, 2012, and Petitioner filed a traverse, styled as a reply, on November 5, 2012.

I. <u>Jurisdiction</u>

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Furman v. Wood</u>, 190 F.3d 1002, 1004 (9th Cir. 1999).

The challenged judgment was rendered by the Superior Court of the State of California, County of Merced (MCSC), which is located within the territorial jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).  Further, Petitioner claims that in the course of the proceedings resulting in his conviction, his due process rights were denied when the trial court denied his request to modify a jury instruction on circumstantial evidence.  The Court, therefore, concludes that it has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. -, -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent Matthew Cate, (doc. 32, 6), the Secretary of the California Department of Corrections and Rehabilitation (CDCR), whom Petitioner named in the FAP. Pursuant to the judgment, Respondent had custody of Petitioner at Petitioner's institution of confinement at the time the petition was

filed.  Petitioner thus named as a respondent a person who had custody of Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules).  See, Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994).  The Court concludes that it has jurisdiction over the person of the Respondent.

## II.  Procedural Summary

Petitioner is on parole after having served a six-year term for his conviction at a jury trial in the MCSC of one count of lewd and lascivious conduct with a child in violation of Cal. Pen. Code § 288(a).  An additional conviction of a forcible lewd act with a child in violation of Cal. Pen. Code § 288(b) was reversed on appeal in the Court of Appeal of the State of California, Fifth Appellate District (CCA), because of instructional error that the CCA concluded affected that count, but the judgment on the remaining count was affirmed.  Petitioner sought review in the California Supreme Court (CSC), and the petition was denied summarily without a statement of reasoning or citation of authority.  (FAP, exhs. B, D, E.)

## III.  Factual Summary

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1); Sanders v. Lamarque, 357 F.3d 943, 947-48 (9th Cir. 2004).  This presumption applies to a statement of facts drawn from a state

appellate court's decision.  <u>Moses v. Payne</u>, 555 F.3d 742, 746 n.1
(9th Cir. 2009).  The following statement of facts is taken from
the opinion of the CCA in <u>People v.Armas</u>, case number F056887, filed
on March 8, 2010.

**FACTS**

Defendant and Olivia had a relationship which produced one
child, G. Olivia has a daughter, S.R., from a prior
relationship. Olivia's sister Ana lived with Olivia and
Olivia's children. Although defendant did not live with
Olivia and her children, he frequently was at the home and
also stayed with S.R. when Ana and Olivia were not home.
In late December 2006, Olivia found out that defendant was
married, and she broke off their relationship.

On January 7, 2007, Olivia was with Juan in front of her
mother's house. Defendant saw Olivia with Juan, and there
was an argument. Defendant told Olivia he was going to
take his daughter, G., away from Olivia. S.R. witnessed
the argument and became very upset. S.R. came inside her
grandmother's house and told her that defendant had done
things to her. She told her grandmother that defendant
would tell her to kiss his penis and defendant would kiss
her all over. Defendant had instructed S.R. to not tell
anyone. He gave S.R. money.

S.R. also told her Aunt Alma what happened to her. When
Olivia came inside, she was told about what defendant had
done to S.R. Olivia called the police.

A videotaped interview of S.R. was conducted in January of
2007 at the "Multi-Discipline Interview Center" (MDIC).
S.R. described the first time defendant touched her
inappropriately. She said she was on the bed when
defendant came in and kissed her on the mouth. S.R. told
the interviewer that defendant would come in while S.R.
was on the bed in her mother's bedroom, remove her
clothing, and lick her on her "private spot." Defendant
would lock the door to the room so G. could not come in.
S.R. would tell defendant to let G. come in, but he would
not let her in the room. S.R. tried to leave, but
defendant would not let her leave and he would say to her,
"don't you want me to kiss you on the mouth and ..." S.R.
also said she would tell defendant to leave her alone.
When S.R. did leave the room, defendant would yell at her

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to come back to the room. When S.R. was in her mother's
bedroom and wanted to return to watching television in the
other room, defendant would not let her leave; she had to
stay in the mother's bedroom. On another occasion,
defendant tried to put his "nasty part" in her private
spot and he got it in. Defendant also kissed her and
licked her breasts. S.R. recalled that one evening when
her mother was at the hospital she woke up to find
defendant licking her private parts. Defendant had removed
her clothes.

When asked about other touchings, S.R. said defendant
touched her "back butt" many times with his hand. S.R. was
afraid to tell anyone about these incidents.

On February 7, 2007, S.R. made a pretextual telephone call
to defendant. During the telephone call, she told him she
wanted to see him. Defendant asked S.R. if she had
received the money he had given to her mother and he told
her that when he went to the store he was going to buy her
something. S.R. told defendant that her mom did not know
she was on the telephone, and she wanted to tell him
something. S.R. then told defendant that she wanted to see
him but he had to promise that he would not do to her what
he had done to her before. He promised he would not. She
told him it was not good for her when he used to touch her
and that those things were bad. Defendant replied that he
knew that and that there would be no more. She repeated to him
several times that he could not touch any part of her
anymore. He replied, "never, never." He finished the
conversation by telling S.R. that when she needs something
she should tell her mom to ask him for it.

Margie Jessen, a nurse practitioner, conducted a sexual
assault examination of S.R. on March 13, 2007. While
conducting the examination with S.R. lying on her back,
Jessen asked her to relax her legs. S.R. said, "That's
what he does to me." Jessen did not include this statement
in her report. The examination was consistent with the
history given by S.R., although the examination was normal
and it could not be determined from the examination
whether defendant did or did not do the acts he was
accused of doing. Jessen testified that it is possible to
insert a penis into the genital area without penetrating
the hymen because the hymen is elastic.

5

At trial in September 2008, S.R. testified about incidents that occurred when she stayed with defendant alone while her mother and aunt were away at work. On these occasions, defendant touched her "a lot of times." She said that defendant kissed her mouth to mouth, touched her breasts, private part, and "back butt" with his hands. He also licked her breasts and her front private part. She remembered one occasion when she was on her mother's bed watching television. Defendant grabbed her, took her clothes off and touched his "nasty part" to her private part. He "put it in there" and it felt "gross" and "nasty"; this type of sexual behavior occurred on only one occasion.

On the day S.R.'s mother went to the hospital, S.R. awoke from her sleep to find defendant licking her private part. On another occasion, defendant and S.R. were outside of the "ranch" in his pickup truck. He licked her private part while they were in the truck. S.R. testified that defendant touched her and licked her at other times, but she was unable to give any specific details. These touchings occurred sometimes in the afternoon after school and sometimes at night.

S.R. testified somewhat inconsistently on whether she resisted defendant. She was scared and did not try to get away, but she also testified that defendant would follow her, grab her, and start doing things to her. She was afraid that if she told her mother defendant would do bad things to her family. S.R. testified that she tried to leave all the time but defendant would grab her. She felt like she wanted to run, she tried, but she did not because she was afraid. S.R. also testified she did not remember any time when she tried to get away but defendant actually kept her from leaving.

When defendant molested S.R. on the bed, he would pull her to face away from the television. When S.R. would try to put her clothes back on, defendant would say to her, "a little bit more." Although defendant never verbalized threats to S.R., she was afraid he would do bad things, would hit her, or would do something to their belongings.

The tapes of the pretextual telephone call and the MDIC interview were played for the jury.

Dr. David Kerns, a pediatrician, testified that girls' genitals heal very rapidly following injury and the majority of girls who have been sexually abused have normal anatomy. If the examination takes place three months or more after clear injury, at the time of the examination the girl will usually appear to have normal anatomy. He testified that it is sometimes difficult for a child to determine if there was vaginal penetration or just superficial contact with the genital area.

S.R.'s mother and aunt testified that the mother went to the hospital in December 2006 and defendant was home with S.R. and G.

**Defense**

Dr. Gail Newel reviewed the photographs from S.R.'s sexual assault examination. She testified that the photographs were not consistent with penile penetration. Because S.R. had a small vaginal opening and a completely intact hymen, penetration of her vagina could be ruled out.

Dr. Bruce Terrell reviewed materials from the case, including the MDIC interview. He testified regarding factors that would support a claim of sexual abuse and factors that would not support a claim of sexual abuse. Dr. Terrell found that S.R. showed little emotion during the MDIC interview and did not hesitate to talk; these are indications that the claimed sexual abuse might not be true. It was Dr. Terrell's opinion that there is usually a motive for false allegations of sexual abuse. One such motive can be child custody issues.

The defense presented evidence of Olivia's, Ana's, and defendant's work schedules to show that defendant could not have been available to baby-sit S.R. on the number of occasions claimed.

(Doc. 31-3 [decision of the CCA in <u>People v. Amado Saldivar Armas</u>, case number F056887, filed on March 8, 2010] at 3-7.)

IV.   <u>Due Process Violation based on Instructional Error</u>

Petitioner argues that his right to due process of law was violated by the trial court's denial of Petitioner's request for modification of CAL CRIM 224, a pattern instruction regarding the

7

jury's consideration of circumstantial evidence.  (Doc. 31 at 5

(citing to 4 CT 760-61); doc. 31, ex. C; 11 RT 3639.)

      A.  <u>Standard of Decision and Scope of Review</u>

Title 28 U.S.C. § 2254 provides in pertinent part:

> (d) An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted
> with respect to any claim that was adjudicated
> on the merits in State court proceedings unless
> the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to,
> or involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

Clearly established federal law refers to the holdings, as

opposed to the dicta, of the decisions of the Supreme Court as of

the time of the relevant state court decision.  <u>Cullen v.</u>

<u>Pinholster</u>, - U.S. -, 131 S.Ct. 1388, 1399 (2011); <u>Lockyer v.</u>

<u>Andrade</u>, 538 U.S. 63, 71 (2003); <u>Williams v. Taylor</u>, 529 U.S. 362,

412 (2000).

A state court's decision contravenes clearly established

Supreme Court precedent if it reaches a legal conclusion opposite

to, or substantially different from, the Supreme Court's or

concludes differently on a materially indistinguishable set of

facts.  <u>Williams v. Taylor</u>, 529 U.S. at 405-06.  The state court

need not have cited Supreme Court precedent or have been aware of

8

it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]." Early v. Packer, 537 U.S. 3, 8 (2002).  A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but applies it to a new set of facts in an objectively unreasonable manner, or 2) extends or fails to extend a clearly established legal principle to a new context in an objectively unreasonable manner. Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.

An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable. Williams, 529 U.S. at 410.  A state court's determination that a claim lacks merit precludes federal habeas relief as long as fairminded jurists could disagree on the correctness of the state court's decision. Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011).  Even a strong case for relief does not render the state court's conclusions unreasonable. Id.  To obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.  The standards set by § 2254(d) are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the

9

benefit of the doubt, and the Petitioner bear the burden of proof.
Cullen v. Pinholster, 131 S.Ct. at 1398.  Habeas relief is not
appropriate unless each ground supporting the state court decision
is examined and found to be unreasonable under the AEDPA.  Wetzel v.
Lambert, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's
legal conclusion was contrary to or an unreasonable application of
federal law, "review... is limited to the record that was before the
state court that adjudicated the claim on the merits." Cullen v.
Pinholster, 131 S.Ct. at 1398.  Evidence introduced in federal court
has no bearing on review pursuant to § 2254(d)(1).  Id. at 1400.
Pursuant to 28 U.S.C. § 2254(e)(1), in a habeas proceeding brought
by a person in custody pursuant to a judgment of a state court, a
determination of a factual issue made by a state court shall be
presumed to be correct; the petitioner has the burden of producing
clear and convincing evidence to rebut the presumption of
correctness.  A state court decision on the merits and was based on
a factual determination will not be overturned on factual grounds
unless it was objectively unreasonable in light of the evidence
presented in the state proceedings.  Miller-El v. Cockrell, 537 U.S.
322, 340 (2003).

With respect to each claim, the last reasoned decision must be
identified to analyze the state court decision pursuant to 28 U.S.C.

§ 2254(d)(1).  Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003).

Here, the last reasoned decision on the claim of instructional error and prejudice was the decision of the CCA filed on March 8, 2010.  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This Court will thus "look through" the unexplained decision of the California Supreme Court to the CCA's last reasoned decision as the relevant state-court determination.  Id. at 803-04; Taylor v. Maddox, 366 F.3d 992, 998 n.5 (9th Cir. 2004).

Where the state court decides an issue on the merits, but its decision is unaccompanied by an explanation, a habeas petitioner's burden must be met by showing that here was no reasonable basis for the state court to deny relief.  Harrington v. Richter, 131 S.Ct. 770, 784. In such circumstances, this Court should perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.  Medley v. Runnels, 506 F.3d 857, 863 n.3 (9th Cir. 2007), cert. denied, 552 U.S. 1316 (2008); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Independent review is not the equivalent of de novo review; rather, the Court must still defer to the state court's ultimate decision. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  However, if the claim was not decided on the merits, this Court must review it de novo.  Cone v. Bell, 556 U.S. 449, 472 (2009); Pirtle v. Morgan, 313 F.3d at 1167.

11

1    Where a state court did not reach the merits of a claim,

2  federal habeas review is not subject to the deferential standard

3  that applies under § 2254(d) to "any claim that was adjudicated on

4  the merits in State court proceedings"; instead, the claim is

5  reviewed <u>de novo</u>.  <u>Cone v. Bell</u>, 556 U.S. 449, 472 (2009).

6         B.  <u>The State Court Decision</u>

7    The CCA reversed the conviction of a forcible lewd act based on

8  the trial court's commission of state law errors, including failing

9  to instruct the jury properly on the unanimity requirement and on

10  the option of convicting Petitioner of the lesser included offense

11  of a lewd and lascivious act on the count charging forcible conduct.

12  (FAP, exh. B, doc. 31-3, 14-23.)  With respect to its decision on

13  Petitioner's challenge to his remaining conviction of one count of

14  having committed a lewd and lascivious act, the pertinent portion of

15  the decision of the CCA is as follows:

16         V. **Circumstantial Evidence Instruction**

17  "The role of CALCRIM No. 224 is to caution the jury before
    relying on circumstantial evidence to find the defendant
18  guilty beyond a reasonable doubt." (*People v. Ibarra*
    (2007) 156 Cal.App.4th 1174, 1187.) CALCRIM No. 224 was
19  read to the jury as follows: "Before you may rely on
    circumstantial evidence to conclude that a fact necessary
20  to find the defendant guilty has been proven, you must be
    convinced that the People have proved each fact essential
21  to that conclusion beyond a reasonable doubt.
22
23  "Also before you may rely on circumstantial evidence to
    find the defendant guilty, you must be convinced that the
24  only reasonable conclusion supported by the circumstantial
    evidence is that the defendant is guilty. If you can draw
25  two or more reasonable conclusions from the circumstantial
    evidence, and one of those reasonable conclusion[s] points
26  to a finding of not guilty, and another to a finding of
    guilty, you must accept the one that points to the finding
27  of not guilty. However, when considering circumstantial
28

12

evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

Defendant requested that one of two alternatives be added to CALCRIM No. 224. His proposed modifications were: "Alternative a: [¶] You may not infer a fact based on a mere possibility that the prosecution has proven it. A mere possibility is nothing more than a suspicion, which is not a sufficient basis for an inference that a fact has been proven. [¶] Please remember, the defendant is not required to prove any fact. [¶] Alternative b: [¶] You may not infer a fact based on a mere possibility that the fact is true. A mere possibility is nothing more than a suspicion, which is not a sufficient basis for an inference of fact. [¶] Please remember, the defendant is not required to prove any fact."

The trial court refused the proposed modifications. It stated: "[T]he idea of [mere] possibility is something that I'm unwilling to go as to go far—it's not necessarily a misstatement of law, not at all. On the other hand, I think that in this particular case, the [notion] of [mere] possibility as to circumstantial evidence would, maybe, apply to a different case than this, but not this case. And the reason for that is that the evidence in this case— the circumstantial evidence in this case which is offered by the prosecution and there is—is not the primary focus of the evidence, whereas in another case in which virtually everything is in the prosecution's case, virtually every element is sought to be proven by [circumstantial] evidence. That might actually be something that you'd want to put in the instructions.

"In this case, the primary focus of the evidence is direct evidence. It's not circumstantial. So this is—don't think [it's] applicable to this case. It may be to another case. I don't find anything particularly wrong with that instruction[ ], but I don't think it's applicable in this case."

Defendant claims the trial court erred in failing to add his proposed modifications to CALCRIM No. 224. He argues the proposed instruction was a correct one and was directly related to the conclusions by the medical experts that one would not necessarily expect to see any physical signs of molestation under the facts of this case. Thus defendant contends the modification related to a key

13

aspect of his case—the absence of physical evidence and the prosecution's attempts to explain why there was a lack of physical evidence. In addition, defendant asserts the proposed modification was necessary because the concept of mere possibility was not covered in any of the other instructions.

Assuming for the sake of argument the requested modification is a correct statement of the law and the trial court erred in failing to modify CALCRIM No. 224, we find that it is not reasonably probable the trial court's failure to so instruct affected the verdicts. (*People v. Hughes* (2002) 27 Cal.4th 287, 363.)

The jurors were instructed that whenever the court tells them the People must prove something it means they must prove it beyond a reasonable doubt. Reasonable doubt was defined as "proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt." (CALCRIM No. 220.)

The jury was instructed on more than one occasion that the People must prove beyond a reasonable doubt each fact necessary to find the defendant guilty. Proof beyond a reasonable doubt is clearly proof that far exceeds a mere possibility. The instructions as given made it known to the jurors that their decisions of fact could not be based on a mere possibility. Defendant was thus not prejudiced by the failure to give his proposed modification to CALCRIM No. 224.

(Doc. 31-3 at 24-26.)

    C.   Analysis

The only basis for federal collateral relief for instructional error is that the infirm instruction or the lack of instruction by itself so infected the entire trial that the resulting conviction violates due process.  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991); Cupp v. Naughten, 414 U.S. 141, 147 (1973); see Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (it must be established not merely that the instruction is undesirable, erroneous or even

14

"universally condemned," but that it violated some right guaranteed
to the defendant by the Fourteenth Amendment).

The instruction may not be judged in artificial isolation, but
must be considered in the context of the instructions as a whole and
the trial record.  Estelle, 502 U.S. at 72.  In reviewing an
ambiguous instruction, it must be determined whether there is a
reasonable likelihood that the jury applied the challenged
instruction in a way that violates the Constitution.  Estelle, 502
U.S. at 72-73 (reaffirming the standard as stated in Boyde v.
California, 494 U.S. 370, 380 (1990)).  The Court in Estelle
emphasized that the Court had defined very narrowly the category of
infractions that violate fundamental fairness, and beyond the
specific guarantees enumerated in the Bill of Rights, the Due
Process Clause has limited operation.  Id. at 72-73.

Moreover, even if there is instructional error, a petitioner is
generally not entitled to habeas relief for the error unless it is
prejudicial.  The harmless error analysis applies to instructional
errors as long as the error at issue does not categorically vitiate
all the jury's findings.  Hedgpeth v. Pulido, 555 U.S. 57, 61 (2008)
(citing Neder v. United States, 527 U.S. 1, 11 (1999) (quoting in
turn Sullivan v. Louisiana, 508 U.S. 275 (1993) concerning erroneous
reasonable doubt instructions as constituting structural error)).
In Hedgpeth v. Pulido, the Supreme Court cited its previous
decisions that various forms of instructional error were trial
errors subject to harmless error analysis, including errors of
omitting or misstating an element of the offense or erroneously
shifting the burden of proof as to an element.  Hedgpeth, 555 U.S.
60-61.  To determine whether a petitioner proceeding pursuant to §

15

2254 suffered prejudice from such an instructional error, a federal court must determine whether the petitioner suffered actual prejudice by assessing whether, in light of the record as a whole, the error had a substantial and injurious effect or influence in determining the jury's verdict. Hedgpeth, 555 U.S. at 62; Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).

In addition to the due process claim, Petitioner argues that the trial court's ruling violates his right under state law to have the jury instructed on the general principles of the case. However, in a proceeding pursuant to 28 U.S.C. § 2254, the Court does not review state law instructional errors. A challenge to a jury instruction based solely on an error under state law does not state a claim cognizable in federal habeas corpus proceedings. Estelle v. McGuire, 502 U.S. at 71-72. A claim that an instruction was deficient in comparison to a state model or that a trial judge incorrectly interpreted or applied state law governing jury instructions does not entitle one to relief under § 2254, which requires violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3). Thus, this Court will not undertake review of the California courts' interpretation or application of the state law governing jury instructions in Petitioner's case.

With respect to his due process claim, Petitioner contends that the failure to permit modification of the instruction violated his right to have the jury instructed on the defense theory of the case. (Doc. 31-1, 6.) Petitioner argues that the modification was particularly necessary with respect to the testimony of Nurse Jessen and Dr. Kerns that the absence of physical evidence of molestation

16

was consistent with having been molested.  Petitioner characterizes

this as extremely important circumstantial evidence because the

direct evidence of molestation provided by the victim's testimony

was suspect.  (Id. at 6-7.)  Petitioner contends that in the absence

of the requested modification, the jury was not adequately

instructed that the lack of evidence of molestation could not be

used to infer that the victim was molested.  (Id. at 8-9.)  He

contends this is prejudicial because the victim's testimony that she

was molested was not otherwise corroborated and was called into

question by the custody dispute between the Petitioner and the

victim's mother, interviewers' use of leading questions with the

victim, and what Petitioner characterizes as an absence of

circumstances that would suggest molestation, including grooming,

bribery, or rewards from Petitioner, and emotionality, depression,

difficulty communicating about the molestation, or other

pathological behavior on the part of the victim.  Petitioner argues

that because the error was not harmless beyond a reasonable doubt,

the petition should be granted, and the conviction should be

reversed.  (Id. at 9-10.)

Here, a fairminded jurist could conclude that it was

objectively reasonable for the state court to decide there was no

substantive omission that rendered the jury instructions

prejudicial, let alone fundamentally unfair.  The state court

decision was reasonable in light of the instructions that were

given.  The jurors were instructed that they must follow the law as

the court explained it even if they disagreed with it, pay careful

attention to all the instructions, and consider them together.  (LD

2, 12 RT 3905.)  The trial court gave the standard instructions that

17

the defendant was presumed innocent, the People had the burden of proving each element of a crime beyond a reasonable doubt, and specifically that "whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt." (Id. at 3906.)  They were instructed to "impartially compare and consider" all the evidence, and unless the evidence proved the defendant guilty beyond a reasonable doubt, he was entitled to an acquittal.  (Id.)  In addition to the standard circumstantial evidence instructions referred to in the CCA's decision, circumstantial and direct evidence were defined and explained, and the jury was instructed that both forms of evidence were acceptable, neither was necessarily entitled to any greater weight, and the jury had to decide whether a fact in issue had been proved based on all the evidence.  (Id. at 3908-09.)  The jury was twice instructed that before it might rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, it must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.  (Id. at 3909-10.)  It was instructed in multiple contexts about the need to accept only reasonable conclusions concerning circumstantial evidence, and to conclude in favor of innocence when multiple reasonable conclusions were possible.  (Id.)  It was told that the testimony of only one witness can prove a fact, but before such a conclusion is reached, the jury should carefully review all the evidence. (Id. at 3912.) In light of these instructions, the jury would not have been confused regarding how to evaluate what Petitioner characterizes as evidence of a mere possibility or chance of molestation.  The omission did not result in any fundamental unfairness.

1    Furthermore, it does not appear that there was a prejudicial

2  denial of the right to present a defense.  Under the Due Process

3  Clause of the Fourteenth Amendment and the Compulsory Process Clause

4  and Confrontation Clause of the Sixth Amendment, a criminal

5  defendant must be afforded a meaningful opportunity to present a

6  complete defense.  Crane v. Kentucky, 476 U.S. 683, 690 (1986);

7  California v. Trombetta, 467 U.S. 479, 485 (1984).  The Supreme

8  Court has characterized its cases as not recognizing a generalized

9  constitutional right to have a jury instructed on a defense

10 available under the evidence under state law.  See, Gilmore v.

11 Taylor, 108 U.S. 333, 343 (1993).  However, when habeas relief is

12 sought under 28 U.S.C. § 2254, a failure to instruct on the defense

13 theory of the case constitutes error if the theory is legally sound

14 and evidence in the case makes it applicable.  Clark v. Brown, 450

15 F.3d 898, 904 (9th Cir. 2006); see, Mathews v. United States, 485

16 U.S. 58, 63 (1988) (reversing a federal conviction and holding that

17 even if a defendant denies one or more elements of the crime, he is

18 entitled to an entrapment instruction whenever there is sufficient

19 evidence from which a reasonable jury could find entrapment, and the

20 defendant requests such an instruction).

21   To obtain relief, a habeas petitioner must show that the

22 alleged instructional error had a substantial and injurious effect

23 or influence in determining the jury's verdict.  Clark v. Brown, 450

24 F.3d at 905; Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

25 Nevertheless, such an error has been held harmless under the Brecht

26 standard where other instructions permitted consideration of the

27 pertinent defensive matter.  Beardslee v. Woodford, 358 F.3d 560,

28 576 (9th Cir. 2004) (failure to instruct on manslaughter was not

error, but if error was harmless because it had no substantial or

injurious effect or influence in determining the jury's verdict

where numerous instructions allowed the jury to consider the effect

of threats upon the accused's mental state, both as an absolute

defense to all charges and as a factor in choosing between first and

second degree murder; the jury had been given more than the simple

all or nothing choice at issue in Beck v. Alabama, 447 U.S. 625,

638-46 (1980); and the jury's decision to reject second degree

murder meant that they would not have accepted the lesser charge of

manslaughter).

    Here, defense counsel argued the defense theory in final

argument based on the instructions given.  Counsel reminded the

jurors that when faced with competing reasonable interpretations of

circumstantial evidence, they must choose an interpretation of

circumstantial evidence that points to a finding of not guilty.  (LD

2, 13 RT 4244-45.)  Counsel addressed the inconsistent expert

opinions about whether penetration had occurred and contended that

because the victim was so small, any penetration would have resulted

in visible, irreparable damage to the hymen.  (Id. at 4249-52.)

Further, when addressing the burden of proof, defense counsel argued

that it was not enough to have a mere suspicion that the defendant

committed the offense, to think that the defendant "may have done

his," or that "there's a chance when that hospital thing happened

that he molested her."  (Id. at 4277.)

    Moreover, although the jury found Petitioner guilty of two

counts of lewd and lascivious acts (one forcible), it did not reach

a unanimous verdict as to an additional charge of aggravated sexual

assault of a child, which required sexual intercourse.  (LD 1, 883-

884; LD 2, 4506-4507.)[1]   This supports a conclusion that the trier
of fact carefully considered the evidence, accepted the victim's
testimony as to lewd and lascivious acts, but found the evidence
insufficient to prove actual sexual intercourse or penetration
beyond a reasonable doubt.

Finally, Petitioner cannot show prejudice under the <u>Brecht</u>
standard because the prosecution presented strong, direct evidence
that he committed at least one lewd act with the victim.   The
victim's testimony was consistent with statements she made to family
members before reporting the crime and with her responses to a
forensic interviewer during a videotaped interview that was played
to the jury.   This testimony was corroborated by the pretextual
telephone call in which Petitioner failed to deny having touched the
victim and also acknowledged that his previous touching was not good
for her, promised not to touch her again, and offered her money and
gifts.

In light of this evidence, Petitioner could not demonstrate
that any failure to instruct the jury with his proposed
modifications of CALCRIM No. 224, pertaining to circumstantial
evidence, had a substantial or injurious effect in determining the
jury's verdict.   Even under a <u>de novo</u> standard of review, the
instructional ruling did not infect the entire trial with

_____

[1] The jury was instructed that the crime of committing a lewd and lascivious act on
a child under the age of fourteen years in violation of § 288(a) requires proof
that the defendant "willfully touched any part of a child's body either on the
bare skin, or through the clothing," with the intent of arousing, appealing to, or
gratifying the lust, passions, or sexual desires of himself or the child.  (LD 2,
12 RT 3915-16.)  The charge of aggravated sexual assault that was rejected by the
jury was defined as the rape of another person under the age of fourteen years by
force, fear, or threats, which included sexual intercourse consisting of "any
penetration, no matter how slight, of the vagina or genitalia by the penis."  (Id.
at 3917-18.)

1  unfairness, vitiate all the jury's findings, or have a substantial

2  and injurious effect or influence in determining the jury's verdict.

3  Accordingly, Petitioner's claim concerning the failure to permit the

4  modified instruction will be denied.

5      V.   Certificate of Appealablity

6      Unless a circuit justice or judge issues a certificate of

7  appealability, an appeal may not be taken to the Court of Appeals

8  from the final order in a habeas proceeding in which the detention

9  complained of arises out of process issued by a state court.  28

10  U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336

11  (2003).  A district court must issue or deny a certificate of

12  appealability when it enters a final order adverse to the applicant.

13  Rule 11(a) of the Rules Governing Section 2254 Cases.

14      A certificate of appealability may issue only if the applicant

15  makes a substantial showing of the denial of a constitutional right.

16  § 2253(c)(2).  Under this standard, a petitioner must show that

17  reasonable jurists could debate whether the petition should have

18  been resolved in a different manner or that the issues presented

19  were adequate to deserve encouragement to proceed further.  Miller-

20  El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S.

21  473, 484 (2000)).  A certificate should issue if the Petitioner

22  shows that jurists of reason would find it debatable whether: (1)

23  the petition states a valid claim of the denial of a constitutional

24  right, and (2) the district court was correct in any procedural

25  ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

26      In determining this issue, a court conducts an overview of the

27  claims in the habeas petition, generally assesses their merits, and

28  determines whether the resolution was debatable among jurists of

22

reason or wrong.  Id.  An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, the Court will decline to issue a certificate of appealability.

VI.   Disposition

Accordingly, it is ORDERED that:

1) The first amended petition for writ of habeas corpus is DENIED;

2) The Clerk is DIRECTED to enter judgment for Respondent; and

3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **September 27, 2014**          **/s/ Sheila K. Oberto**
                                        UNITED STATES MAGISTRATE JUDGE